

'09 CIV 8310

James D. Fornari, Esq. (JF3433)
GERSTEN SAVAGE LLP
600 Lexington Avenue
New York, New York 10022
Tel:    (212) 752-9700
Fax:    (212) 980-5192
jfornari@gerstensavage.com

**Attorneys for Plaintiff**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**SPONGETECH DELIVERY SYSTEMS, INC.,**

Plaintiff,

Versus                                          **COMPLAINT**

                                                **CIVIL ACTION NO**

**GETFUGU, INC. and**
**JOHN DOES 1-10, JANE DOES 1-10, and**          **JURY TRIAL**
**ABC CORPORATION 1-10,**                        **DEMANDED**

Defendants.

---

Plaintiff, SPONGETECH DELIVERY SYSTEMS, INC. (**"SPONGETECH"** or
the **"COMPANY"**), by its attorneys, Gersten Savage LLP, for its Complaint against the
Defendants, GETFUGU, INC. (**"GETFUGU"**), JOHN DOES 1-10, JANE DOES 1-10,
and ABC CORPORATION 1-10, hereby allege and state as follows:

## PRELIMINARY STATEMENT OF THE CASE

1.     This is an action for breach of contract, breach of fiduciary duty, common law
fraud, conversion, willful misconduct, unlawful appropriation of funds and to recover

1

money which was delivered to GETFUGU as payment for providing services and a mobile search tool and as deposits towards the purchase of equity in GETFUGU, which money, upon information and belief, certain Defendants have converted to their own use.

## INTRODUCTION

2.      In or about late August, 2009,  SpongeTech and Getfugu entered into a series of negotiations by which SpongeTech was offered:  a) securities of Getfugu; and, b)  a service agreement ("**Service Agreement**") which was to permit SpongeTech to become the first customer and user of Getfugu's mobile search platform.

3.      SpongeTech was offered the right to purchase 7 Million shares of common stock of Getfugu at $0.50 per share and warrants to purchase an additional 5 Million shares of common stock, exercisable at $0.01 per share.

4.      SpongeTech was told that Getfugu had developed a unique and proprietary, next generation, mobile search platform ("**Platform**") which recognized logos and products through a mobile phone camera  and that SpongeTech would be the first user of the Platform if it entered into the Service Agreement and paid Getfugu $250,000 immediately.

5.      In an effort to accommodate Getfugu and structure a business transaction involving SpongeTech and Getfugu, including the purchase of stock and warrants and the acquisition of the Service Agreement to make SpongeTech the first user of the Platform (a "**Business Transaction**"), SpongeTech caused to have transferred to Getfugu the sum of $250,000 ("**Service Funds**") in consideration for which Getfugu agreed to provide SpongeTech services ("**Services**") under the Service Agreement in perpetuity as long as Getfugu offered Services to any customer.

6.     From in or about September 2 through September 10, 2009, SpongeTech caused $1.5 Million to be forwarded to Getfugu as deposits for the shares of stock and warrants that SpongeTech had agreed to buy ("**Securities Purchase Funds**").  Those funds were solely for the purchase of securities and for no other purpose and Getfugu had no right to use or otherwise spend those funds unless and until the stock and warrants were delivered to SpongeTech.

7.     On September 24, 2009 Getfugu forwarded a letter to Spongetech purporting to revoke and rescind the Business Transaction, including the sale of securities, providing Services and the use of the Platform.

8.     Getfugu failed and refused to return any of the funds and converted all of the money to its own use.  Upon information and belief, Getfugu fraudulently obtained the funds for use as working capital and to pursue its business plan and then actually used a substantial part of them to pay past debts and liabilities.

9.     Getfugu converted the Stock Purchase Funds from equity to debt without any consent on the part of SpongeTech.  Getfugu unilaterally terminated SpongeTech's access to the Platform but failed to return any of the Service Funds.

10.    Upon information and belief, JOHN DOES 1-10, JANE DOES 1-10, and ABC CORPORATION 1-10 aided and abetted in the fraud and scheme to convert the Stock Purchase Funds and Service Funds (jointly the "**Funds**") to Getfugu's own use and engaged in transactions to take the Funds out of Getfugu and to otherwise make them unavailable to repay SpongeTech.

11.     Plaintiff brings this action against Getfugu and JOHN DOES 1-10, JANE DOES 1-10, and ABC CORPORATION 1-10 for common law fraud, conversion, breach of fiduciary duty, breach of contract, bad faith and self-dealing, unlawful appropriation of funds, and to recover money delivered as a deposit but not returned.  Plaintiff seeks its damages together with costs, interest and reasonable attorneys fees.

## JURISDICTION

12.     This Court has jurisdiction over all claims set forth herein as an action where the matter in controversy exceeds $75,000, exclusive of interest and costs and it is between citizens of different States, pursuant to 28 U.S.C. § 1332 (a) and (c).

13.     This Court has jurisdiction over Getfugu in that the Funds originated and were disbursed within the State of New York, and a substantial part of the transaction took place within the State of New York.

14.     Upon information and belief, one or more of the officers of Getfugu traveled into the State of New York to negotiate, perpetrate, aid and abet and otherwise commit the actionable activities set forth herein.  Upon information and belief, the officers, including Michael Solomon, acted on behalf of themselves and Getfugu.

15.     Upon information and belief, Defendants John Doe 1-10, Jane Doe 1-10 and ABC Corporation 1-10 are individuals and entities, whose identities are presently unknown to Plaintiff, who have participated, aided, abetted, conspired with and otherwise assisted Getfugu in the perpetration and commission of the unlawful and actionable acts hereinafter alleged.

4

## VENUE

16.     Venue is proper within the Southern District of New York in that, upon information and belief, a substantial part of the events, actions and omissions giving rise to the claims occurred within this District and Defendant Getfugu is subject to personal jurisdiction within this District.

## THE PARTIES AND OTHER PARTICIPANTS

17.     Plaintiff SpongeTech was, at all times, a Delaware corporation authorized to do business in the State of New York and having a principal place of business at 43 West 33rd Street, Suite 600, New York, New York, 10001.

18.     Upon information and belief, Defendant Getfugu was, at all times, a Nevada Corporation with a principal place of business at 600 Townsend Street, San Francisco, California, 94103.

19.     In or about August 2009, a number of the officers and executives of Getfugu traveled to New York and met with Mr. Steven Moskowitz, SpongeTech's Chief Executive Officer. During the course of that meeting, Getfugu executives extolled the virtues of Getfugu's Platform and actively sought to convince SpongeTech to advertise on the Platform and become Getfugu's first customer.

20.     Getfugu advised Moskowitz that SpongeTech was being afforded a unique opportunity to become Getfugu's first customer and advised him that SpongeTech could acquire this opportunity and remain on the Platform in perpetuity for the sum of $250,000. Getfugu further represented that: "The Seller (Getfugu) will provide a customized application on the Company's platform", which SpongeTech reasonably believed would cost the bulk of the Service Funds to create and maintain.

21.     During the course of the meeting between Getfugu and SpongeTech, Getfugu offered to sell certain of its securities to SpongeTech at a price which was less than the current price for similar securities then being offered on a national exchange. Specifically, Getfugu offered to sell SpongeTech and Vanity Events Holdings, Ltd., ("**Vanity**") 7 Million shares of Getfugu's common stock and warrants to purchase 5 Million additional shares of its common stock (the "**Securities**").

22.     Getfugu represented that it would sell the shares for $0.50 per share and the warrants could be exercised for $0.01 per share. Getfugu further represented that the Securities Purchase Funds would be used for: "General working capital purposes which includes purchase of hardware required for the September 9, 2009 launch". Getfugu drafted and provided to SpongeTech an initial term sheet ("**Term Sheet**") which set forth the general parameters of the Business Transaction and agreed that it would hold any Securities Purchase Funds transmitted to it for the benefit of SpongeTech while the parties negotiated definitive agreements.

23.     On August 24, 2009, in reliance on Getfugu's representation that SpongeTech would become the Platform's first customer and would remain on the Platform in perpetuity, Spongetech obtained funds from its investment arm, RM Enterprise International, Inc. ("**RM**") and had those funds transmitted by electronic wire to Getfugu.

24.     From in or about September 2, 2009 to approximately September 10, 2009, counsel for Getfugu and SpongeTech negotiated definitive contracts (the "**Definitive Contracts**") which provided for Spongetech being on the Platform in perpetuity and for the sale of the Securities. In good faith reliance on Getfugu's representations that it would deliver the Securities, SpongeTech obtained additional funds from RM in the

amount of $1,500,000.00 and had those Securities Purchase Funds transmitted by electronic wire to Getfugu.

25.     The Securities Purchase Funds were, at all times, to be held for the benefit of SpongeTech and solely for the purchase of the Securities, until the Securities were delivered to SpongeTech. The Securities Purchase Funds were solely for the purchase of equity in Getfugu and were never to be deemed a loan or other debt obligation.

26.     On or about September 24, 2009, Getfugu unilaterally and unlawfully sought to revoke and rescind the Business Transaction and sent a letter to SpongeTech purporting to terminate all aspects of the Business Transaction ("**Termination Letter**"). A copy of the Termination Letter is attached as Exhibit A.

27.     As a further part of its unlawful activities, Getfugu terminated SpongeTech's presence on the Platform, while maintaining the Platform for use by other parties.

28.     Getfugu sought to justify its unlawful action by referring to unfounded accusations made in a New York Post article that SpongeTech had engaged in forgery and identity theft and that it had been engaging in short selling of Getfugu's stock, in violation of federal securities laws.

29.     As yet a further part of its scheme and artifice, Getfugu failed and refused to return any of the Securities Purchase Funds or the Service Funds. Instead it characterized them as liabilities on its books, and said it would repay them at some unspecified time. In truth and fact it converted the Funds to its own use rather than holding them for the benefit of SpongeTech.

30.     On information and belief, Getfugu used a substantial part of the funds to pay past liabilities and payables which it had accrued, rather than holding the funds for the benefit of Spongetech.

31.     Despite refusing to return the Securities Purchase Funds and the Service Funds ostensibly on the grounds that the Funds had been spent and were therefore not available to it, Getfugu issued a press release that:

> "It has been an exciting month for GetFugu. **We have met or exceeded all targets to date, have more than adequate funding to continue operations into the foreseeable future,** and remain on track for next month's launch of our revolutionary new mobile search technology, which will include the full breadth of our application directed toward the consumer." (Emphasis added)

32.     Upon information and belief, Getfugu is improperly and illegally using the Funds to continue its operations into the foreseeable future rather than return them to SpongeTech, and is otherwise dealing in bad faith with regard to SpongeTech's Funds.

33.     Upon information and belief, Getfugu, at the time that it solicited the Funds from SpongeTech, did not intend to consummate the Business Transaction, but rather intended to convert the Funds to its own use without giving to SpongeTech the Securities.

## IN AND FOR A FIRST CAUSE OF ACTION – COMMON LAW FRAUD

34.     Plaintiff realleges each and every fact set forth in paragraphs 1-33 above and incorporates them by reference herein.

35.     Getfugu has falsely and fraudulently obtained the Funds from SpongeTech and has failed and refused to return the Funds which were to be used to purchase the Securities.

36.     Getfugu has falsely and fraudulently characterized the Funds as debt in an effort to avoid having to return them to SpongeTech.

37.     SpongeTech has been damaged by Getfugu's action in an amount to be determined but in no event less than $1,750,000.00

## IN AND FOR A SECOND CAUSE OF ACTION – CONVERSION

38.     Plaintiff realleges each and every fact set forth in paragraphs 1-37 above and incorporates them by reference herein.

39.     Getfugu obtained the Funds from SpongeTech and was to hold them for SpongeTech's benefit until the parties executed the Definitive Contracts and Getfugu delivered to SpongeTech the Securities.

40.     Getfugu has failed and refused to go forward with the Business Transaction.

41.     Getfugu has failed and refused to deliver to Spongetech the Securities or to return the Funds which were to be used to purchase the Securities.

42.     Getfugu has converted the Funds to its own use and has sought to falsely characterize them as a loan or liability on its books, rather than as payment for Securities.

43.     SpongeTech has been damaged by Getfugu's action in an amount to be determined but in no event less than $1,750,000.00

9

## IN AND FOR A THIRD CAUSE OF ACTION – BREACH OF CONTRACT

44.     Plaintiff realleges each and every fact set forth in paragraphs 1-43 above and incorporates them by reference herein.

45.     Getfugu obtained the Securities Purchase Funds from SpongeTech as a deposit to be credited against the full payment for the Securities to be delivered to SpongeTech, which were the subject of the Definitive Contracts.

46.     Getfugu obtained the Service Funds from SpongeTech as full payment for the perpetual use of the Platform, which was also the subject of the Definitive Contracts.

47.     Getfugu failed and refused to deliver the Securities to SpongeTech and has taken SpongeTech off of the Platform.

48.     Getfugu has breached its contact and agreements with SpongeTech

49.     SpongeTech has been damaged by Getfugu's action in an amount to be determined but in no event less than $1,750,000.00.

## IN AND FOR A FOURTH CAUSE OF ACTION –

## BREACH OF FIDUCIARY DUTY AND OBLIGATION TO DEAL IN GOOD FAITH

50.     Plaintiff realleges each and every fact set forth in paragraphs 1-49 above and incorporates them by reference herein.

51.     Getfugu obtained the Funds from SpongeTech and was to hold them for SpongeTech's benefit until the parties executed the Definitive Contracts and Getfugu delivered to SpongeTech the Securities.

52.     Getfugu undertook an obligation to retain the Funds and either deliver the Securities or return the Funds.

53.     Upon information and belief, Getfugu, by its undertaking, became and was acting as a fiduciary and was to maintain the Funds and not otherwise dispose of them until it had delivered to SpongeTech the Securities.

54.     Getfugu has failed and refused to deliver to Spongetech the Securities or to return the Funds which were to be used to purchase the Securities.

55.     Getfugu has used the Funds, has sought to continue to retain whatever funds it has not spent and has sought to falsely characterize them as a loan or liability on its books, rather than as payment for Securities.

56.     Getfugu has breached its obligation to act as a fiduciary and has breached its obligation to act in good faith.

57.     SpongeTech has been damaged by Getfugu's action in an amount to be determined but in no event less than $1,750,000.00

WHEREFORE, Plaintiff request judgment against Defendants as follows:

      a)     Compensatory damages including unjust enrichment in an amount to be determined at trial, but in no event less that the outstanding amount of the Funds, to wit $1,750,000.00;

      b)     An award of reasonable attorneys' fees;

c)   All costs of the proceeding herein, along with pre and post judgment interest;

d)   Specific performance in reinstating SpongeTech on the Platform under the Definitive Contracts in accordance with their terms;

e)   An Order directing Getfugu and each of its Officer to deliver to Plaintiff forthwith all title in and actual possession of all remaining Funds and all hardware and software and any other items which were purchased with any of the Funds;

f)   An Order setting aside any fraudulent conveyances and transferring the assets so conveyed to Plaintiff;

g)   An Order creating a constructive trust and/or equitable lien on any and all property of the Defendants obtained through or as the result of the wrongful conduct set forth herein;

h)   Punitive and exemplary damages;

i)   Such other and further relief as the Court deems just and proper under the circumstances.


GERSTEN SAVAGE LLP
Attorneys for Plaintiff

By: _____

James D. Fornari (JF3433)
600 Lexington Avenue
New York, New York 10022
Tel:   (212) 752-9700
Fax:   (212) 980-5192

12

Exhibit A



## 600 Townsend Street, San Francisco, CA  94103

September 24, 2009

**VIA ELECTRONIC MAIL TO COUNSEL**

SpongeTech Delivery Systems, Inc.
Vanity Events Holdings, Ltd.
43 West 33rd Street, Suite 600
New York, NY  10001
<u>Attention</u>: Mr. Steven Moskowitz

      Re:    <u>Potential Violations by SpongeTech Delivery Systems</u>

Dear Mr. Moskowitz:

As you know, until September 10, 2009, GetFugu, Inc. ("GetFugu" or the "Company") was negotiating an investment in the Company by SpongeTech Delivery Systems, Inc. ("SpongeTech") and Vanity Events Holdings, Ltd.  Our counsel has been negotiating definitive agreements with your counsel, but we have not received your executed signatures to the draft definitive agreements.  To date we have received the following partial deposits by electronic wire:

| Amount | Date Deposited |
|---|---|
| $   250,000 | August 24, 2009 |
| 500,000 | September 2, 2009 |
| 500,000 | September 4, 2009 |
| 500,000 | September 10, 2009 |
| $1,750,000 | |

In recent days, the management of GetFugu has become aware of the following information:

- We have reason to believe that you have been engaging in short selling of Company stock in anticipation of your proposed investment in the Company in violation of federal securities laws.

- SpongeTech has been publicly accused of forgery and identity theft in connection with attorney opinion letters allegedly forged by SpongeTech.

In addition, in researching these events, it came to our attention that the payor in each of the electronic wires described above was RM Enterprises International, Ltd., not SpongeTech or Vanity.  We are unsure about the connection of RM Enterprises with SpongeTech or Vanity.  RM Enterprises was never considered by GetFugu to be a party to the proposed investment, and we were previously unaware of the existence of RM Enterprises.  We find troubling the fact that

SpongeTech Delivery Systems, Inc.
September 24, 2009
Page 2

monies have come from this entity, rather than SpongeTech or Vanity as originally intended and
as publicly announced by all parties.

In light of these events, we have concluded that GetFugu can no longer be associated
with SpongeTech or Vanity, and our continued public association with SpongeTech and its
potentially illegal activities is jeopardizing GetFugu and its continued viability. We therefore
have no choice but to immediately terminate any further negotiations regarding an investment in
the Company or any other business transaction.

Please consider this a revocation of your pending investment transaction in the Company,
effective immediately. The Company also rescinds any "offer" that we may have made to issue
or sell to you our securities or provide you with our mobile search services, and any other type of
business transaction. We also rescind the signature pages that our counsel sent to your counsel
on September 10, 2009 in escrow pending completion of the definitive documents. No counter-
signature from SpongeTech or Vanity was ever received.

The Company intends to fully repay to RM Enterprises its partial deposits totaling
$1,750,000. However your actions have put us at a disadvantage. We have planned our capital
expenditures carefully and had not intended to repay these deposits towards an equity
investment. We are now seeking alternative financing sources to fund a reimbursement of these
monies, but will need some time to raise the necessary funds. Until the Company is able to repay
these amounts, we will accrue a liability to RM Enterprises on our books and the unpaid liability
will accumulate interest based on the one-year LIBOR index plus 1.5%. We expect to be able to
repay RM Enterprises in the near term, but this is subject to market conditions and may take
more time.

As a public company, we are also required to publicly announce the termination of our
business relationship. We intend to issue a press release announcing this.

The Company reserves all of its rights to seek all available remedies, in law and equity,
against SpongeTech, Vanity and RM Enterprises. This letter is not intended and should not be
construed as a release, waiver of relinquishment of any right, remedy or defense which may be
available to the Company, all of which are expressly reserved.

Sincerely,

Bernard Stolar
Chief Executive Officer

cc:    Arthur Marcus, Esq.